## In re RECTOR'S.

### In re WARD.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 109.

**1. SALES ☞477—CONDITIONAL SALES—RENEWAL OF NOTES—EVIDENCE.**

Where it was obvious that it was the intention of the parties that a note given by a conditional vendee to the vendor should be in renewal of one of the purchase-money notes, this fact was sufficiently proved, though aside from a letter there was no explicit evidence that it was so given, and the parties apparently assumed, without considering it necessary to explicitly agree, that it should be a renewal.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1411–1417; Dec. Dig. ☞477.]

**2. SALES ☞459—CONDITIONAL SALES—PAROL MODIFICATION OF CONTRACT.**

A provision in a contract for the conditional sale of personal property against modifications of the contract, except in writing, did not prevent the parties from agreeing that the title should remain in the seller until a note given in renewal of one of the purchase-money notes was paid, as the parties could agree to disregard such provision.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1337–1347; Dec. Dig. ☞459.]

**3. SALES ☞477—CONDITIONAL SALES—WAIVER OF SECURITY—SALE OF PURCHASE-MONEY NOTES.**

Where, though a conditional seller of personal property sold the purchase-money notes, they were not sold without recourse, and the seller remained liable as indorser and had taken them up, the sale of the notes was not an election to consider them as final payment and a waiver of the reservation of title.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1411–1417; Dec. Dig. ☞477.]

**4. SALES ☞477—CONDITIONAL SALES—WAIVER OF SECURITY—SURRENDER OF NOTES.**

Under Personal Property Law N. Y. (Consol. Laws, c. 41) § 65, providing that whenever articles are sold upon the condition that the title shall remain in the vendor until payment of the purchase price, and they are retaken by the vendor, they shall be retained for 30 days, during which period the vendee may comply with the terms of the contract, and thereupon receive the property, and that after the expiration of such period the vendor may cause them to be sold at public auction, and unless so sold within 30 days after the expiration of such period the vendee may recover the payments on such articles, the refusal of a seller to surrender the purchase-money notes on demand was not a waiver of his right to retake the property, even assuming that the notes could not be enforced in addition to retaking the property.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1411–1417; Dec. Dig. ☞477.]

**5. BANKRUPTCY ⊚═►267—CONDITIONAL SALES—SALE OF PROPERTY BY TRUSTEE —SURRENDER OF NOTES.**

If a surrender of the notes was necessary, it was sufficient for the seller, in a bankruptcy proceeding against a lessee or purchaser of the property from the conditional vendee, to offer to surrender the notes on the hearing upon a master's report and before final decree.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380; Dec. Dig. ⊚═►267.

What constitutes a contract of conditional sale, see note to Dunlop v. Mercer, 86 C. C. A. 448.]

**6. SALES ⊚═►473—CONDITIONAL SALES—RIGHTS OF THIRD PARTIES.**

Where a contract for the sale of property had annexed thereto as an exhibit a form of bill of sale providing that title should remain in the seller, bills of sale subsequently executed, reserving title to the seller, were valid as against one who leased or purchased the property from the conditional vendee with knowledge of the agreement, though the bills of sale were not executed until after the delivery of the property; the statute at the time protecting only purchasers without notice from the seller's title reserved in a bill of conditional sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1377–1390; Dec. Dig. ⊚═►473.]

**7. BANKRUPTCY ⊚═►267—SALE BY TRUSTEE—CLAIMS BY THIRD PERSONS.**

Where property sold with a reservation of title to the seller was sold or leased by the conditional vendee to a party which subsequently became bankrupt, though the strictly proper course was for the vendor to retake the property and sell it under Personal Property Law N. Y. § 65, returning the surplus, where the property had been sold in the bankruptcy proceeding, the question whether the vendor had a lien was wholly academic.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380; Dec. Dig. ⊚═►267.]

Petition to Revise and Appeal from Order of the District Court of the United States for the Southern District of New York.

The opinion of Learned Hand, District Judge, is as follows:

[1] The trustee raises five points, which I shall take up seriatim. The first point is that the fifth note was paid and the ninth note was a loan. This rests upon the fact that the fifth note was paid before the ninth was given, and that, therefore, the ninth could not be in renewal of it. There is not the slightest question about the intention of the parties, Stoddard's letter of August 24, 1912, is only one bit of evidence which happens to be explicit. No other evidence is necessary, because the intention is so obvious from the situation of the parties and from the oral testimony of the various interviews that occurred. It is inconceivable that the new note should not have been expected to have all the security of the old, or that the seller should have advanced new money at the very moment that he found the debtor embarrassed. It is perhaps true that outside of Stoddard's letter there is not any explicit recognition of this feature, but people do not feel it necessary in talk to expatiate upon what is the obvious purport of the whole interview. Nothing is commoner in such matters than to find the whole interview taken up with the discussion of details which presuppose, but do not expressly embody, the fundamental assumption upon which the whole proceeds. Stoddard's letter, he swears, was made in execution of the arrangements theretofore made, and all the testimony corroborates, without contradiction, the interpretation which the petition puts upon the transaction.

[2] I have not been able to find out with certainty whether the trustee contends that, if the parties did so intend, there was any legal obstacle in the way of their intention. If so, I must overrule it, for there is no reason whatever which prevented them from agreeing that the title should remain

⊚═►For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in Stern until the ninth note was paid quite as easily as all the rest. That was the upshot of the agreement. The provision against modifications of the contract, except in writing, cannot, of course, bind the parties, if they subsequently agree to disregard it, though it may prove a strong bit of evidence, if they disagree as to whether they did subsequently modify it. Here there is no conflict of evidence. It seems hardly necessary to go over the question of consideration, if we once see that the money lent in August was in pursuance of a prior arrangement.

[3] The second point is that the sale of the notes was an election to consider them as final payment. The notes were not sold without recourse, as was presumed in Hawks v. Hinchcliff, 17 Barb. 492. They were indorsed over. It makes not the slightest difference whether we call it a sale or a discount for the purposes of this case. The point raised, perhaps, justifies an analysis of the whole situation. The notes were given and the property was delivered, but with a condition that title should not pass until all the notes were paid, and if not paid the property might be retaken. Two notes were not paid, and the conditional seller, who was indorser, has taken them up. It is now urged that, though he remained liable as indorser, and though he has taken up the notes, his sale waived the security in his favor arising from the condition in the title, and left him without protection. By what process of reasoning this result is reached I confess I cannot conceive. It attributes an intention to the parties quite absurd and destructive of the very purpose of the whole undertaking. The condition in the title certainly continued so long as was necessary for the protection of the conditional seller, and enabled him to retake until he was free of the notes.

[4, 5] The third point is that the notes should have been surrendered, and that the refusal to do so is an election to waive the right to reclaim. No doubt equity might, unassisted, have provided that the retaken title should be held in fact only as a security for the unpaid balance. This it might have done in consonance with its general relief against forfeitures, but the statute in New York has stepped in and done the same thing. Personal Property Law, § 65. The corollary of this would seem to allow the seller to sue for the balance in case the property did not bring the full amount, which would convert the transaction into a chattel mortgage and nothing more. The contrary was, however, held in Earle v. Robinson, 91 Hun, 363, 36 N. Y. Supp. 178, affirmed on opinion below in 157 N. Y. 683, 51 N. E. 1090.

That question is, however, somewhat different from whether the notes must be surrendered as a condition of retaking. Granting that they may not be enforced, it may be that they need not be surrendered. The decision in Brewer v. Ford, 54 Hun, 116, 7 N. Y. Supp. 244, and 59 Hun, 17, 12 N. Y. Supp. 619; Id., 126 N. Y. 643, 27 N. E. 852, can be explained only on the theory that the seller need not surrender the notes, and it is so explained by Justice Van Brunt in Earle v. Robinson, supra, in an opinion which was accepted by the Court of Appeals. It must be taken that a suit may be brought to retake property held under conditional sale without surrender. Yet, even were it not so, I think that it is sufficient that the seller in the case at bar, which was begun by a receiver and is still in this court upon a master's report, offers now to surrender the notes. It is certainly his right to reserve his option until he is put to an election, and to elect before final decree.

[6] The fourth point is that the delivery was made on or before December 28, 1910, and that no bills of sale were executed until after that time. There was a contract of April 15, 1910, with a form of bill of sale annexed as an exhibit which in the most explicit way provided that the title of all the property delivered should remain in the seller. Rector's, the bankrupt, took its lease with full knowledge of this agreement, and was as much bound by it as the buyer, the Hotel Rector Company, whether the lease of the latter was a lease proper or a purchase. At that time the statute protected only purchasers without notice from the seller's title reserved in the bill of conditional sale. Just how the trustee seeks to avoid the contract of April 15, 1910, because it was not observed to the letter, I cannot understand. Apparently his contention rests upon the fact that the delivery of

the chattels took place before the bills of sale were executed. It seems hardly necessary to discuss that position.

[7] The last point is that in this proceeding the petitioner should not assert a lien. I agree that in this proceeding the strictly proper course was to retake the property and to sell it under section 65 of the Personal Property Law, giving back the surplus. It really makes small difference whether you call the right a lien or not, for it certainly has exactly the same effect in the end as a lien. The property has in fact been sold, and the whole question is academic.

The petitioner may take a decree for the amount of the notes, with interest to date, together with its disbursements and a docket fee, upon surrender of the notes. If there is any surplus, it will go to the estate. I direct the trustee not to take an appeal from the decree to be entered, without submitting the matter to a meeting of creditors called for that purpose, and thereafter getting the consent of this court.

J. F. McNaboe, of New York City, for petitioner.
A. H. Townley, of New York City, for respondent.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. Order affirmed on opinion of the District Judge.